MAYER BROWN LLP
MICHAEL A. MOLANO (SBN 171057)
mmolano@mayerbrown.com
GRAHAM (GRAY) M. BUCCIGROSS
(SBN 234588)
gbuccigross@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2061

MAYER BROWN LLP
GRANT T. MILLER (SBN 301604)
gtmiller@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Attorneys for Defendant
TIMBUK2 DESIGNS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

TARGUS GROUP INTERNATIONAL LLC, a Delaware corporation,

Plaintiff,

v.

TIMBUK2 DESIGNS, INC., a California corporation,

Defendant.

Case No. 8:17-cv-00972-CJC-KES

**TIMBUK2 DESIGNS, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Defendant Timbuk2 Designs, Inc. ("Timbuk2") hereby answers the Complaint for Patent Infringement of U.S. Patent No. 8,567,578 ("the '578 Patent") filed by Plaintiff Targus Group International LLC ("Targus") on June 6, 2017[1] (Dkt. 1) ("the Complaint") as follows:

[1] Timbuk2 and Targus stipulated to extend the time for Targus to serve the Complaint, from September 8, 2017 to November 6, 2017. (Docket No. 16.) Timbuk2 sent a waiver of service on October 4, 2017. (Docket No. 19.)

## PARTIES[2]

1. Timbuk2 lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 1, and therefore denies such allegations.

2. Timbuk2 admits that it is a California corporation with a principal place of business located at 583 Shotwell St., San Francisco, CA 94110.

## NATURE OF THE ACTION

3. Paragraph 3 contains allegations and/or conclusions of law to which no response is required. To the extent a response is required, Timbuk2 admits that Targus purports to bring this action under the patent laws of the United States, Title 35 of the United States Code, but denies that the Complaint asserts any viable cause of action, and denies that any liability is owed to Targus in this case.

4. Timbuk2 denies the allegations in Paragraph 4.

## JURISDICTION AND VENUE

5. Paragraph 5 contains allegations and/or conclusions of law to which no response is required. To the extent a response is required, Timbuk2 admits that this Court has subject matter jurisdiction over an action for alleged violations of the United States patent laws. Timbuk2 denies the remaining allegations in Paragraph 6, and specifically denies that Targus has standing to assert the ’578 Patent.

6. Paragraph 6 contains allegations and/or conclusions of law to which no response is required. To the extent a response is required, Timbuk2 admits that Timbuk2 regularly conducts business in California and in this District, including through advertising and selling products within this District through in-person sales, and derives revenue from products provided to persons within California and this District. Timbuk2 denies the remaining allegations in Paragraph 6

---

[2] The headings in the Complaint are reproduced herein solely for the convenience of the reader. To the extent such headings include or infer allegations, they are hereby denied.

7. Paragraph 7 contains allegations and/or conclusions of law to which no response is required. To the extent a response is required, Timbuk2 admits that the venue requirements of 28 U.S.C. §§ 1391 and 1400(b) are satisfied in this action, to the extent they apply.

**FACTUAL BACKGROUND**

8. Timbuk2 lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies such allegations.

9. Timbuk2 lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 9, and therefore denies such allegations.

10. Timbuk2 admits that the '578 Patent cover page has an issued date of October 29, 2013, and title of "Portable Computer Case." Timbuk2 denies that the face of the '578 Patent reflects that Targus is the owner by assignment of the '578 Patent. Timbuk2 lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10, and therefore denies such allegations.

11. Timbuk2 lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies such allegations.

12. Timbuk2 denies the allegations in Paragraph 12.

13. Timbuk2 denies the allegations in Paragraph 13.

14. Timbuk2 denies the allegations in Paragraph 14.

15. Timbuk2 denies the allegations in Paragraph 15.

**COUNT ONE**

16. Timbuk2 repeats and re-asserts its responses to the foregoing paragraphs, above.

17. Timbuk2 admits that Targus provided a letter to Timbuk2 identifying the '578 Patent and accusing Timbuk2 of infringing. Timbuk2 denies that the Complaint asserts any viable cause of action and denies that any liability is owed to Targus in this case. Timbuk2 denies that it has infringed any valid and

enforceable claim of the ’578 Patent, and thus denies that it had actual or constructive knowledge of any infringement. Timbuk2 lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17, and therefore denies such allegations.

18. Timbuk2 denies the allegations in Paragraph 18.

19. Timbuk2 denies the allegations in Paragraph 19.

20. Timbuk2 denies the allegations in Paragraph 20.

21. Timbuk2 denies the allegations in Paragraph 21.

22. Timbuk2 denies the allegations in Paragraph 22.

23. Timbuk2 denies the allegations in Paragraph 23.

24. Timbuk2 denies the allegations in Paragraph 24.

25. Timbuk2 denies the allegations in Paragraph 25.

## PRAYER FOR RELIEF

Timbuk2 denies that Targus is entitled to any relief whatsoever in this action, either as prayed for in its Complaint and Demand for Jury Trial, or otherwise.

Timbuk2 prays that the Court declare Targus’s claims exceptional and grant Timbuk2 an award of Timbuk2’s reasonable attorneys’ fees, costs, and expenses, including but not limited to an award under 35 U.S.C. Section 285, and all other relief that the Court may deem just and proper.

## DEFENSES

Subject to its response above, and upon information and belief, Timbuk2 alleges and asserts the following defenses in response to the allegations of the Complaint. Without assuming any burden other than that imposed by operation of law, Timbuk2 asserts these defenses without admitting that Timbuk2 bears the burden of proof on any of them. In addition to the defenses described below,

Timbuk2 reserves all rights to allege additional defenses as they become known through the course of this action.

**FIRST DEFENSE**
**(Non-Infringement)**

Timbuk2 does not infringe and has not infringed, literally or by the doctrine of equivalents, any valid and enforceable claim of the '578 Patent, either directly, contributorily, by inducement, jointly, or in any other matter.

**SECOND DEFENSE**
**(Invalidity)**

On information and belief, each and every claim of the '578 Patent is invalid for failure to comply with the conditions of patentability specified in, but not limited to, 35 U.S.C. §§ 101-103, 111-113, 112, and 116.

**THIRD DEFENSE**
**(Inequitable Conduct/Unclean Hands)**

Targus's claims for relief are barred, in whole or in part, because the claims of the '578 Patent are unenforceable based on the doctrines of inequitable conduct and unclean hands. The specific facts supporting this defense are as follows.

On March 3, 2008, the Transportation Security Administration ("TSA") of the United States Department of Homeland Security announced plans to implement security procedures to allow travelers to pass through airport security checkpoints without having to remove their laptops from their bags.

On that same date, the TSA publicly announced specific guidelines and specifications required for each laptop bag to comply with to be TSA compliant or Checkpoint Friendly. For example, the TSA published a "Request for Information Checkpoint Friendly Laptop Bag" ("the TSA RFI," attached hereto as Exhibit A) on March 3, 2008 on the www.fbo.gov website under Solicitation Number HSTS04-08-RFI-MC. The TSA RFI further set forth certain performance criteria

for the proposed laptop bag designs, as well as certain "high-level design concepts" for bags that the TSA provided as "illustrative examples of possible solutions." (Exhibit A at 19.)

The TSA RFI also stated that "[r]esponders to this RFI will submit sample/prototype bags and designs to TSA. TSA will then review the sample/prototype bags and designs and use the submittals to evaluate whether it can eliminate the requirement to remove laptops from bags for certain types of bags." (*Id*. at 20.) The TSA embarked on a five-month collaboration with laptop bag manufacturers, including Targus, to design and develop laptop bags that comply with TSA guidelines, requirements and restrictions, including among other things: (1) a designated laptop-only section; (2) the laptop-only section completely unfolds to lie flat on the X-ray belt; (3) no metal straps, zippers or buckles inside, underneath or on top of the laptop-only section; (4) no pockets on the inside or outside of the laptop-only section; and (5) nothing packed in the laptop-only section other than the computer itself. Moreover, the TSA established three pilot airport sites, Austin, Texas (AUS), Washington Dulles area (IAD), and Ontario, California (ONT), where bag manufacturers, including Targus, made appointments to test bags and receive direct feedback from the TSA to refine and modify bag designs to comply with the March 2008 TSA guidelines and specifications for Checkpoint Friendly laptop bags.

On information and belief, during the collaboration with the TSA, Bui Phu Cuong, Todd Gormick, and Robert Shortt — Targus employees and also named inventors of the '578 Patent — received guidance and participated in numerous discussions and meetings with representatives from the TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, modifying, and refining laptop bags that are encompassed by the claims of the '578 Patent. Cuong, Gormick, and Shortt participated in conference calls with TSA representatives in which the TSA

provided further guidance regarding suitable Checkpoint Friendly laptop bag designs, including specific laptop bag features, materials, fasteners, and enclosures required to be qualified as Checkpoint Friendly. Further, Cuong, Gormick, and Shortt met with TSA representatives at a pilot airport site to receive direct input and feedback from the TSA regarding specific laptop bag designs that are covered by the subject matter of the '578 Patent. On February 13, 2009, prosecuting attorney, John R. Thompson, filed a U.S. patent application on behalf of Targus, seeking to cover subject matter resulting from the collaboration with the TSA, naming Cuong, Gormick, and Shortt as inventors. This application issued as the '578 Patent on October 29, 2013.

At least the following information was material to the patentability of the subject matter claimed in the application that resulted in the issuance of the '578 Patent, and the issued claims of the '578 Patent: (1) Cuong, Gormick, and Shortt's participation in a collaboration with the TSA to conceive of, design, and develop the subject matter claimed in the '578 Patent; (2) the TSA's specific guidelines, requirements, and restrictions for Checkpoint Friendly laptop bags; and (3) the TSA's contributions to the laptop bag designs that are covered by the '578 Patent. But for Cuong, Gormick, Shortt, and prosecuting attorney Thompson's failure to disclose at least this material information to the PTO, the '578 Patent would not have issued. Further, this withholding constituted egregious misconduct.

Cuong, Gormick, and Shortt, and prosecuting attorney Thompson knowingly withheld this material information with the specific intent to deceive the United States Patent and Trademark Office ("PTO"), because they failed to disclose to the PTO Cuong, Gormick, Shortt, and Targus's collaboration with the TSA in conceiving of, designing, and developing the subject matter of the '578 Patent.

Thus, the claims of the ’578 Patent are rendered unenforceable under the doctrines of inequitable conduct and unclean hands, and Targus’s claims should be barred.[3]

**FOURTH DEFENSE**
**(Prosecution History Estoppel)**

On information and belief, Targus is estopped from asserting that the ’578 Patent and its respective claims are infringed under the doctrine of equivalents because of certain admissions and statements the patent applicants made to the PTO during the prosecution of the application that resulted in the ’578 Patent.

**FIFTH DEFENSE**
**(Limitation on Damages)**

On information and belief, Targus’s right to seek damages is limited, including, without limitation, by 35 U.S.C. §§ 286, 287, and 288.

**SIXTH DEFENSE**
**(Failure to State a Claim)**

The Complaint fails to state a claim upon which relief can be granted.

**SEVENTH DEFENSE**
**(Equitable Defenses)**

On information and belief, Targus’s claim for relief is barred in whole or in part by equitable doctrines including, but not limited to, equitable estoppel and/or other doctrines.

---

[3] This Court denied Targus’s motion to strike CODi, Inc.’s defenses of inequitable conduct and unclean hands in *Targus Group International, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC(Ex), based on the same underlying facts, finding CODi had adequately pled both defenses. *See Targus Group Int’l, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC(Ex), Docket No. 39 (Sept. 17, 2015 C.D. Cal.) (Carney, Judge) (“It stands to reason that if the ‘578 Patent simply incorporates the TSA’s previously published specifications for compliant bags that existed prior to the patent application, the PTO likely would have considered that publication as an example of prior art in its decision whether to grant the ‘578 Patent.”).

**EIGHTH DEFENSE**
**(Limitation on Costs)**

Targus is precluded from recovering costs under 35 U.S.C. § 288.

**NINTH DEFENSE**
**(Injunctive Relief Not Available)**

Targus is not entitled to any form of injunctive relief because Targus has not suffered, and will not suffer, irreparable harm because of Timbuk2's conduct, Targus has an adequate remedy at law, and the balance of hardship and the public interest do not favor injunctive relief.

**TENTH DEFENSE**
**(No Willful Infringement)**

Targus is not entitled to enhanced or increased damages for willful infringement because Timbuk2 has not engaged in any conduct that meets the applicable standard for willful infringement.

**ELEVENTH DEFENSE**
**(No Exceptional Case)**

Targus is not entitled to relief pursuant to 35 U.S.C. § 285 because Timbuk2 has not engaged in any conduct that meets the applicable standard to render this case exceptional.

**TWELFTH DEFENSE**
**(Lack of Standing)**

Targus has failed to provide any evidence that it has standing to bring this action on the '578 Patent.

**TIMBUK2 DESIGNS, INC.'S COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 13, Timbuk2 Designs, Inc. ("Timbuk2") asserts the following Counterclaims against Targus Group International LLC ("Targus") as follows:

## PARTIES

1. Timbuk2 is a corporation organized and existing under the laws of the State of California, with a principal place of business located at 583 Shotwell Street, San Francisco, California 94110.

2. Targus alleges in its Complaint filed on June 6, 2017 (Docket No. 1) ("the Complaint)," that it is a Delaware corporation with a principal place of business located at 1211 N. Miller Street, Anaheim, California 92806.

## JURISDICTION AND VENUE

3. According to the allegations in the Complaint, Targus claims certain rights arising under the patent laws of the United States and related to U.S. Patent No. 8,567,578 ("the '578 Patent").

4. This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. A definite and concrete, real and substantial, justiciable controversy exists between Timbuk2 and Targus regarding, *inter alia*, the non-infringement, invalidity, and unenforceability of the '578 Patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Subject matter jurisdiction over these counterclaims arises under 28 U.S.C. §§ 1331, 1338(a), and 2201.

5. This Court has personal jurisdiction over Targus at least because Targus has consented to personal jurisdiction in this District by filing the Complaint in this action.

6. Venue is proper for these counterclaims as Targus has consented to venue in this District pursuant to 28 U.S.C. §§ 1391 and 1400 by filing the Complaint in this action.

## FACTUAL BACKGROUND

7. Targus alleges in its Complaint that it is the owner by assignment of the '578 Patent (Docket No. 1 at ¶ 10).

8. Targus has expressly charged Timbuk2 with infringement of the '578 Patent, and has sought relief for such alleged infringement in its Complaint. Timbuk2 has denied that it infringes or has infringed any valid or enforceable claim of the '578 Patent, and has asserted that the '578 Patent claims are invalid and unenforceable. Thus, for at least these reasons, there exists an actual controversy between the parties regarding non-infringement, invalidity, and unenforceability of the '578 Patent.

## FIRST COUNTERCLAIM
## (Declaration of Non-Infringement)

9. Timbuk2 repeats and incorporates by reference Paragraphs 1-8 of the Counterclaims above as if fully set forth therein.

10. A definite and concrete, real and substantial, justiciable controversy exists between Timbuk2 and Targus regarding, *inter alia*, the non-infringement of any valid and enforceable claim of the '578 Patent with respect to the manufacture, offer for sale, or sale of any Timbuk2 products accused by Targus.

11. Timbuk2 does not infringe and has not infringed, literally or by the doctrine of equivalents, any valid and enforceable claim of the '578 Patent, either directly, contributorily, by inducement, jointly, or in any other manner.

## SECOND COUNTERCLAIM
## (Declaration of Invalidity)

12. Timbuk2 repeats and incorporates by reference all of the allegations set forth in paragraphs 1-11 of the Counterclaims as if fully set forth therein.

13. On information and belief, each and every claim of the '578 Patent is invalid for failure to comply with the conditions and requirements for patentability

specified in, but not limited to, 35 U.S.C. §§ 101-103, 111-113, and 116 in effect at the time the '578 Patent issued.

**THIRD COUNTERCLAIM**
**(Declaration of Unenforceability)**

14. Timbuk2 repeats and incorporates by reference all of the allegations set forth in paragraphs 1-13 of the Counterclaims as if fully set forth therein.

15. The claims of the '578 Patent are unenforceable based on the doctrines of inequitable conduct and unclean hands. The specific facts supporting this defense are as follows.

16. On March 3, 2008, the Transportation Security Administration ("TSA") of the United States Department of Homeland Security announced plans to implement security procedures to allow travelers to pass through airport security checkpoints without having to remove their laptops from their bags.

17. Also on March 3, 2008, the TSA publicly announced specific guidelines and specifications required for each laptop bag to comply with to be TSA compliant or Checkpoint Friendly.

18. For example, the TSA published a "Request for Information Checkpoint Friendly Laptop Bag" ("the TSA RFI," attached hereto as Exhibit A) on March 3, 2008 on the www.fbo.gov website under Solicitation Number HSTS04-08-RFI-MC.

19. The TSA RFI set forth certain performance criteria for the proposed laptop bag designs, as well as certain "high-level design concepts" for bags that the TSA provided as "illustrative examples of possible solutions." (Exhibit A at 19.)

20. The TSA RFI stated that "[r]esponders to this RFI will submit sample/prototype bags and designs to TSA. TSA will then review the sample/prototype bags and designs and use the submittals to evaluate whether it

can eliminate the requirement to remove laptops from bags for certain types of bags." (*Id*. at 20.)

21. The TSA began a five-month collaboration with laptop bag manufacturers to design and develop laptop bags that comply with TSA guidelines, requirements and restrictions, including among other things: (1) a designated laptop-only section; (2) the laptop-only section completely unfolds to lie flat on the X-ray belt; (3) no metal straps, zippers or buckles inside, underneath or on top of the laptop-only section; (4) no pockets on the inside or outside of the laptop-only section; and (5) nothing packed in the laptop-only section other than the computer itself.

22. On information and belief, Targus collaborated with the TSA to design and develop laptop bags.

23. The TSA established three pilot airport sites in Austin, Texas (AUS), Washington Dulles area (IAD), and Ontario, California (ONT), where bag manufacturers made appointments to test bags and receive direct feedback from the TSA to refine and modify bag designs to comply with the March 2008 TSA guidelines and specifications for Checkpoint Friendly laptop bags.

24. On information and belief, Targus made appointments for the TSA to test bags, and received feedback from the TSA.

25. The '578 Patent cover page lists Bui Phu Cuong, Todd Gormick, and Robert Shortt as inventors.

26. Messrs. Cuong, Gormick, and Shortt were Targus employees in 2008.

27. On information and belief, during the collaboration with the TSA, Mr. Cuong received guidance and participated in numerous discussions and meetings with representatives from the TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, modifying, and refining laptop bags that are encompassed by the claims of the '578 Patent.

28. On information and belief, during the collaboration with the TSA, Mr. Gormick received guidance and participated in numerous discussions and meetings with representatives from the TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, modifying, and refining laptop bags that are encompassed by the claims of the '578 Patent.

29. On information and belief, during the collaboration with the TSA, Mr. Shortt received guidance and participated in numerous discussions and meetings with representatives from the TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, modifying, and refining laptop bags that are encompassed by the claims of the '578 Patent.

30. On information and belief, Mr. Cuong participated in conference calls with TSA representatives in which the TSA provided further guidance regarding suitable Checkpoint Friendly laptop bag designs, including specific laptop bag features, materials, fasteners, and enclosures required to be qualified as Checkpoint Friendly.

31. On information and belief, Mr. Gormick participated in conference calls with TSA representatives in which the TSA provided further guidance regarding suitable Checkpoint Friendly laptop bag designs, including specific laptop bag features, materials, fasteners, and enclosures required to be qualified as Checkpoint Friendly.

32. On information and belief, Mr. Shortt participated in conference calls with TSA representatives in which the TSA provided further guidance regarding suitable Checkpoint Friendly laptop bag designs, including specific laptop bag features, materials, fasteners, and enclosures required to be qualified as Checkpoint Friendly.

33. On information and belief, Mr. Cuong met with TSA representatives at a pilot airport site to receive direct input and feedback from the TSA regarding

specific laptop bag designs that are covered by the subject matter of the ’578 Patent.

34. On information and belief, Mr. Gormick met with TSA representatives at a pilot airport site to receive direct input and feedback from the TSA regarding specific laptop bag designs that are covered by the subject matter of the ’578 Patent.

35. On information and belief, Mr. Shortt met with TSA representatives at a pilot airport site to receive direct input and feedback from the TSA regarding specific laptop bag designs that are covered by the subject matter of the ’578 Patent.

36. On February 13, 2009, prosecuting attorney, John R. Thompson, filed a U.S. patent application on behalf of Targus, seeking to cover subject matter resulting from the collaboration with the TSA, naming Cuong, Gormick, and Shortt as inventors.

37. This application issued as the ’578 Patent on October 29, 2013.

38. At least the following information was material to the patentability of the subject matter claimed in the application that resulted in the issuance of the ’578 Patent, and the issued claims of the ’578 Patent: (1) Cuong, Gormick, and Shortt’s participation in a collaboration with the TSA to conceive of, design, and develop the subject matter claimed in the ’578 Patent; (2) the TSA’s specific guidelines, requirements, and restrictions for Checkpoint Friendly laptop bags; and (3) the TSA’s contributions to the laptop bag designs that are covered by the ’578 Patent.

39. But for Cuong, Gormick, Shortt, and prosecuting attorney Thompson’s failure to disclose at least this material information to the PTO, the ’578 Patent would not have issued.

40. Further, this withholding constituted egregious misconduct.

41. Cuong, Gormick, and Shortt, and prosecuting attorney Thompson knowingly withheld this material information with the specific intent to deceive the United States Patent and Trademark Office ("PTO"), because they failed to disclose to the PTO Cuong, Gormick, Shortt, and Targus's collaboration with the TSA in conceiving of, designing, and developing the subject matter of the '578 Patent.

42. Thus, the claims of the '578 Patent are rendered unenforceable under the doctrines of inequitable conduct and unclean hands.[4]

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant Timbuk2 prays that the Court declare and issue judgment:

A. Dismissing Targus's Complaint with prejudice and denying each and every prayer for relief contained therein;

B. Declaring that Timbuk2 has not infringed any valid, enforceable claim of the '578 Patent;

C. Declaring that the claims of the '578 Patent are invalid under one or more sections of 35 U.S.C. §§ 101 *et seq.*;

D. Declaring that the claims of the '578 Patent are unenforceable due to inequitable conduct and unclean hands;

E. Granting an award of Timbuk2's reasonable attorneys' fees, costs, and expenses, including but not limited to an award under 35 U.S.C. § 285; and

---

[4] This Court denied Targus's motion to strike CODi, Inc.'s defenses of inequitable conduct and unclean hands in *Targus Group International, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC(Ex), based on the same underlying facts, finding CODi had adequately pled both defenses. *See Targus Group Int'l, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC(Ex), Docket No. 39 (Sept. 17, 2015 C.D. Cal.) (Carney, Judge) ("It stands to reason that if the '578 Patent simply incorporates the TSA's previously published specifications for compliant bags that existed prior to the patent application, the PTO likely would have considered that publication as an example of prior art in its decision whether to grant the '578 Patent.").

F. Granting Timbuk2 such other and further relief that this Court may deem necessary, just or proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Defendant and Counterclaimant Timbuk2 demands a trial by jury on all issues triable by right to a jury in this matter.

Dated: December 4, 2017

MAYER BROWN LLP

By: */s/Michael A. Molano*

MAYER BROWN LLP
MICHAEL A. MOLANO (SBN 171057)
mmolano@mayerbrown.com
GRAHAM (GRAY) M. BUCCIGROSS (SBN 234588)
gbuccigross@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2061

Attorneys for Defendant
TIMBUK2 DESIGNS, INC.